IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN RICHARD QUEVI, | ) |
| | ) Civil Action No. 11-962 |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| RAYMOND LAWLER; *ET AL.*, | ) Magistrate Judge Cynthia Reed Eddy |
| | ) |
| Respondents. | ) |
| | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and there is no basis upon which to issue a certificate of appealability.

### II. REPORT

Petitioner, Kevin Richard Quevi, a state prisoner serving a life sentence at the State Correctional Institution at Huntingdon, Pennsylvania has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in connection with his conviction for Murder in the Second Degree. For the reasons that follow, the Petition should be denied.

#### A. Relevant Factual and Procedural History

On direct appeal, the Trial Court set forth the following relevant facts.

> [O]n May 12, 1998 the body of Stephen Caleffie was found lying on a couch in his apartment which was located above an Italian restaurant w[h]ere he worked. He had been shot three times in the head. Joseph Schidek, a friend of both the victim and the defendant, when initially questioned by the police, denied having any knowledge of, or involvement in, the shooting. After being questioned several times by various police officers investigating the shooting, he was asked to submit to a polygraph examination. Following that, the detectives confronted him with their belief that he was not telling them the truth. He was advised of his rights and agreed to give a statement. In this statement he told the detectives that [he] was present in the Caleffie apartment with the defendant and

1

saw him shoot the victim.

Schidek told the officers, and testified in Court, that on several prior occasions the defendant tried to enlist his aid in robbing the victim. On the night before the victim's body was found, Schidek said that he was present outside Caleffie's apartment with the defendant. The defendant once again stated that he wanted to rob the victim. Schidek tried to talk the defendant out of robbing the victim but the defendant produced a weapon, pointed it at Schidek's forehead and said, "follow me." Schidek proceeded up the steps to the Caleffie apartment entered the apartment and proceeded immediately to the bathroom. As he was exiting the bathroom, he heard one shot and then saw the defendant fire twice into what appeared to be the victim lying on the couch. Schidek then fled from the apartment and ran up the street. When he was approximately one block away he looked back and saw the defendant also leaving the apartment.

The Commonwealth's evidence also established that within a day or two of the shooting, the defendant and his girlfriend, without telling anyone where they were going, took a bus out of the Pittsburgh area and remained outside of Pittsburgh until the defendant's arrest several weeks later in Erie, Pennsylvania. The Commonwealth established that at some point prior to the shooting the defendant was observed in possession of a .22 caliber automatic handgun. Forensic analysis determined that the bullets that killed the victim were fired from a .22 caliber automatic. Finally, the Commonwealth presented the evidence of a security guard at a building near the scene of the murder who related at approximately 1:30 a.m. on the morning following the shooting, which according to the witness Schidek took place at approximately 10:15, he gave the defendant a ride into Carnegie. He stated that the defendant appeared to be out of breath and sweating but noted no other unusual circumstances.

The defendant did not testify but presented an alibi defense. His mother, father, and a neighbor all testified that on the evening of the shooting at or around the time that it was supposed to have taken place, the defendant was at home with his family and girlfriend celebrating his mother's birthday.

ECF No. 20-4, pp. 2-4.

On July 23, 1999, in the Court of Common Pleas of Allegheny County, Pennsylvania, the jury found petitioner guilty of second degree murder. Immediately following the verdict, Petitioner was sentenced to the mandatory term of life imprisonment. After post sentence motions were denied, Petitioner filed a timely appeal to the Superior Court of Pennsylvania. The Superior Court affirmed Petitioner's judgment of sentence on March 13, 2001. ECF No. 20-6.

Petitioner filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania, which was denied by that Court on March 6, 2002.

On September 6, 2002, Petitioner filed a *pro se* Petition for relief under the Pennsylvania Post Conviction Relief Act (P.C.R.A), 42 Pa. Cons. Stat. § 9542. Following the appointment of several counsel, an amended PCRA Petition was filed on April 16, 2007. On August 30, 2007, Petitioner, through his appointed attorney, filed a Hybrid Amended PCRA wherein he raised the same claims he is asserting in his federal Habeas Corpus Petition. On February 5, 2008, Judge Manning issued a Notice of Intent to Dismiss. On April 2, 2008, Petitioner, through counsel, filed a Response to Notice of Intention to Dismiss. On May 23, 2008, Judge Manning issued an Amended Notice of Intent to Dismiss. On September 15, 2008, Judge Manning issued an Order of Court dismissing the Hybrid Amended PCRA Petition. On October 10, 2008, Petitioner filed a timely notice of appeal to the Superior Court of Pennsylvania. On October 23, 2009, the Superior Court affirmed the denial of PCRA relief (ECF No. 21-8). Petitioner filed a Petition for Allowance of Appeal, which was denied by the Supreme Court of Pennsylvania on April 6, 2010.

Petitioner filed his timely Petition for a Writ of Habeas Corpus with this Court on October 20, 2010 wherein he raises the following claims.

> 1. Ineffective assistance of counsel: Petitioner's right to testify was violated when trial counsel informed Petitioner not to testify, even though the said Petitioner indicated with certainty that Petitioner did want to testify and argued with his lawyer that because of the alibi defense Petitioner felt it necessary to testify. Trial counsel informed him not to testify. Trial counsel never told the said Petitioner that Petitioner had a constitutional right to testify if he wanted to testify.
>
> 2. Appellate counsel was ineffective for failing to raise the weight of the evidence claim.
>
> 3. Both counsel were ineffective for failing to raise a sufficiency of the

3

evidence claim regarding second degree murder.

## B. Standard of Review

In describing the role of federal habeas corpus proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant state-court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. Greene v. Fisher, ___ U.S. ___, 132 S.Ct. 38 (2011); Cullen v. Pinholster, 563 U.S. ——, 131 S.Ct. 1388, 1398 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Jamison v. Klem, 544 F.3d 266, 274 (3d Cir. 2008). The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court, Williams, 529 U.S. at 405, although district and appellate federal court decisions evaluating Supreme Court precedent may amplify such precedent, Hardcastle v. Horn, 368 F.3d 246, 256 n. 3 (3d Cir. 2004) (citing Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999)). The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8, (2002); Jamison, 544 F.3d at 274-75. Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves an unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Williams, 529 U.S. at 407. A showing of clear

5

error is not sufficient. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly. Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005); Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. ——, ——,131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 786–87.

A recent decision of the Supreme Court illustrates the deference that the federal courts must accord to state court decisions. In Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855 (2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the

6

determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

Lett, 130 S.Ct. at 1862. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision - or, for that matter, the trial judge's declaration of a mistrial - was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, People v. Lett, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event - for the reasons we have explained - **whether the trial judge was right or wrong is not the pertinent question under AEDPA.**

*Id.* at 1865, n. 3 (emphasis added).[1] *See also* Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

### C. Review of Petitioner's Claims

All of Petitioner's claims assert ineffective assistance of counsel. The Sixth Amendment

---

1. *See also* Harris v. Ricci, 607 F.3d 92, 99 (3d Cir. 2010) (explaining and applying Lett).

7

right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). *See also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (holding that the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair and unreliable. Strickland, 466 U.S. at 689. A defendant is not entitled to relief unless he makes both showings. *Id.* at 687. Moreover, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id.* at 694. The Strickland standard applies equally to appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2002). Pennsylvania applies the same test for ineffective assistance of counsel as the Strickland test used in federal courts. Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).

With regard to the first criterion, counsel's effectiveness is measured objectively

8

considering all the circumstances. Strickland, 466 U.S. at 687-88. In evaluating counsel's performance, the Court must "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances. *Id.* at 689. "Strickland and its progeny make clear that counsel's strategic choices will not be second guessed by *post hoc* determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 466 U.S. at 689). The relevant inquiry is not whether counsel was prudent, appropriate, or perfect; rather, the focus is simply to ensure that Petitioner received a fundamentally fair trial.

With respect to the second criterion, to establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Prejudice must be evaluated in light of the "totality of the evidence presented at trial" and a verdict only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Rolan, 445 F.3d at 982 (quoting United States v. Gray, 878 F.2d 702, 712 (1989)).

In analyzing Petitioner's claims under the two-part test announced in Strickland, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under Strickland is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. Berryman, 100 F.3d 1089, 1095 (3d Cir. 1996). In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies. *Id.* Likewise, a state court's determination that a decision was a

tactical one is a question of fact. *Id.*

The Supreme Court recently reiterated the difficulty of prevailing on an ineffectiveness claim on habeas review.

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (internal quotations and citations omitted). The Court further instructed:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under §2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S.Ct. at 788 (internal quotations and citations omitted).

Petitioner's claims are reviewed below under the standard of review set forth above.

1. Right to Testify

In his first claim, Petitioner asserts that his right to testify was violated when trial counsel informed him not to testify, even though he indicated with certainty to his lawyer that he did want to testify and argued with his lawyer that because of the alibi defense he felt it necessary to testify. Trial counsel informed him not to testify and failed to tell him that he had a constitutional right to testify.

As respondent points out, a criminal defendant has a fundamental right to testify on his own behalf. Rock v. Arkansas, 483 U.S. 44 (1987). The defendant's right to testify is firmly rooted in the United States Constitution and is grounded in several provisions of the Constitution. Specifically, the Due Process Clause of the Fourteenth Amendment, which provides that no one shall be deprived of liberty without due process of law, includes a right to be heard and to offer testimony. *Id.* at 51. In addition, the Compulsory Process Clause of the Sixth Amendment, which grants the defendant the right to call witnesses in his defense, includes a defendant's right to testify should he decide it is in his favor to do so. *Id.* at 52. Finally, the right to testify is a necessary corollary to the Fifth Amendment's protection against compelled testimony. *Id.*

On appeal from the denial of the PCRA petition, the Superior Court of Pennsylvania held as follows.

> In his counseled Hybrid Amended PCRA Petition, filed on August 30, 2007, Quevi alleged that his right to testify was violated because trial counsel advised him not to testify, and that his appellate counsel was ineffective for failing to raise this issue on appeal. Quevi alleged that "[t]here was simply no reason for [Quevi] not to testify consistently with his family and neighbor's testimony that he was far away from the scene of the murder when it occurred – a jury would obviously prefer to hear that from [Quevi] himself and evaluate his credibility rather than hearing it from family members." PCRA counsel for Quevi further alleged that he had spoken to trial counsel, who had informed him "that he had no specific

11

recollection of his interaction with [Quevi] regarding [Quevi's] decision not to testify . . . but that he always discusses the matter with his clients and outlines the pros and cons of testifying and not testifying."

Based on the allegations set forth in Quevi's Hybrid Amended Petition, it appears that trial counsel did not recall his interaction with Quevi concerning Quevi's right to testify, but that trial counsel always discussed that matter with his clients and explained the advantages and disadvantages of testifying. Based on these allegations, we conclude that Quevi has failed to set forth a claim of arguable merit with regard to his allegation that counsel failed to inform him of his right to testify. In addition, with regard to his claim that trial counsel told him not to testify, Quevi has failed to allege any facts to support this allegation. Thus, we conclude that Quevi failed to set forth a claim of arguable merit as to his allegations of ineffectiveness in regard to his right to testify.

In addition, Quevi failed to allege how counsel's purported actions or inactions prejudiced him. Quevi has alleged that he would have testified in conformity with the testimony of his family members and neighbor that he was with them at the time of the murder. As Quevi's testimony would have been merely cumulative of testimony already admitted, Quevi's allegation fails to establish that there was a reasonable probability that the outcome of the proceedings would have been different if Quevi had testified. Accordingly, Quevi has failed to establish prejudice. Thus, we conclude that the PCRA court did not err in failing to conduct an evidentiary hearing on this issue. In addition, because there is no merit to Quevi's claim of trial counsel's ineffectiveness, Quevi's claim of appellate counsel's ineffectiveness also fails.

Sup.Ct.Op. dated 9/15/2009 (ECF No. 21-8, pp. 6-7) (internal citations omitted).

Petitioner appears to suggest that when counsel fails to properly advise a client concerning the right to testify, such defective performance by counsel is not susceptible to analysis under Strickland's two-prong standard, but is instead a "structural defect" in the entire trial process that requires automatic reversal, irrespective of prejudice. This exact argument recently was specifically rejected by the Court of Appeals for the Third Circuit.

We are not persuaded by Palmer's argument that his attorney's alleged failure to advise him of his right to testify falls within th[e] very limited category of errors that are *per se* reversible. First, every authority we are aware of that has addressed the matter of counsel's failure to advise a client of the right to testify has done so under Strickland's two-prong framework, which requires the petitioner to show that the deficient conduct actually had an adverse effect on the defense.

12

Moreover, Strickland itself cannot be read to carve out a prejudice exception for right-to-testify cases. By its terms, Strickland applies to all manner of ineffective assistance of counsel claims. The Court carefully and expressly specified only two categories of ineffective assistance claims in which prejudice may be presumed: cases of actual or constructive denial of the assistance of counsel altogether and cases in which counsel is burdened by an actual conflict of interest. Needless to say, neither category is applicable here. Apart from these two categories, Strickland makes clear, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.

Finally, [defendant's] claim that his attorney failed to advise him of his right to testify in his own defense is not the sort of structural defect for which the automatic reversal rule is reserved. Most constitutional errors are of the trial type, and, as the Supreme Court recently emphasized, the few errors that have been classified as structural defects have been so categorized because the nature of the right at issue is such that the effect of the violation cannot be ascertained on review under traditional harmless-error standards. Hence, [the Supreme Court] explains, the violation of the Sixth Amendment's public-trial guarantee is considered a structural defect because 'the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance; discriminatory practices in jury selection are structural because the effect of the violation cannot be ascertained; and the deprivation of a defendant's right to counsel of his or her choosing, the consequences of which are necessarily unquantifiable and indeterminate, constitutes a structural defect.

By contrast, a defendant's testimony (or lack thereof) occurs during the presentation of the case to the jury and may therefore be quantitatively assessed in the context of other evidence presented. In other words, when a defendant states, "I would have testified to X, Y, and Z, but my attorney would not put me on the stand," the significance of such testimony can be evaluated in the context of the remainder of the evidence in order to assess the impact of the constitutional violation; this is precisely the type of constitutional error that is amenable to conventional review in the context of the trial and evidence as a whole. In contrast, when a defendant is, for example, denied the right to the attorney of his choice, tried before a biased judge, or denied the right to represent himself at trial, the impact of the violation defies harmless error analysis, because any such analysis would be a speculative inquiry into what might have occurred in an alternate universe.

Of course, the defendant's own testimony is very likely to be highly important-as we noted above, the most important witness for the defense in many criminal cases is the defendant himself. As the Ninth Circuit has noted, as a general matter, it is only the most extraordinary of trials in which a denial of the defendant's right to testify can be said to be harmless beyond a reasonable doubt.

13

> But it is precisely the fact that the contours of the defendant's probable testimony (as expressed in an affidavit on collateral review) can be assessed in the context of the evidence as a whole that distinguishes the right-to-testify issue from structural defects, the effects of which are inherently elusive, intangible, and not susceptible to harmless error review. In the absence of any Supreme Court authority to the contrary, and in light of the unanimous determination by the Courts of Appeals that have addressed the issue that Strickland's two-prong test applies in right-to-testify cases, we conclude that Palmer was not excused from making a prima facie showing of prejudice in his petition for post-conviction relief.

Palmer v. Hendricks, 592 F.3d 386, 397-99 (3d Cir. 2010) (internal citations, quotations and footnotes omitted.

Here, the Superior Court concluded that Petitioner failed to meet the prejudice prong of Strickland because his own alibi testimony would only have been cumulative to that provided by his mother, father and neighbor. Thus, the Superior Court concluded that, because the jury was presented with the information that Petitioner would have testified to, he had failed to demonstrate that, had he testified, there is a reasonable probability that the outcome of the trial would have been different. Strickland, 466 U.S. at 694. This decision is not an unreasonable application of Strickland and is not based upon an unreasonable determination of the facts in light of the state court record. *Accord* Spruill v. Clarke, Civil No. 2:10-618, 2011 WL 3290393, 6-7 (E.D. Va. June 8, 2011) (because counsel presented two alibi witnesses, the defendant failed to demonstrate that, had he testified, there is a reasonable probability that the outcome of the trial would have been different); Williams v. Ault, Civil No. 07-3072, 2010 WL 299155, 30-31 (N.D. Iowa Jan. 19, 2010) (concluding that the outcome of the case would not have been different had the defendant testified and thus he did not suffer prejudice). Consequently, Petitioner is not entitled to relief as to this claim.

2.  Failure to Preserve Weight of Evidence Claim on Appeal

Second, Petitioner claims that appellate counsel was ineffective for failing to raise a

weight of the evidence claim. Petitioner claims that appellate counsel was ineffective because trial counsel preserved the claim at trial and post-sentence motions.

In reviewing Petitioner's ineffective assistance of counsel claim during Petitioner's post-conviction proceedings, the Superior Court held as follows.

> "The weight of the evidence is exclusively for the finder of fact who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." Commonwealth v. Johnson, 668 A.2d 97, 101 (Pa. 1995) (citation omitted).
>
>> A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

Commonwealth v. Diggs, 949 A.2d 873, 879-880 (Pa. 2008).

> Quevi's claim concerning counsel's ineffectiveness for failing to raise a weight of the evidence claim centers on the testimony of Schidek. Quevi asserts that Schidek was an admitted liar, that he repeatedly changed his story about the murder, and that his allegation that he had nothing to do with the murder was incredible. He also asserts that the jury was never informed that Schidek had taken a polygraph exam, which had shown deception on Schidek's part. Quevi further argues that there was no evidence linking him to the crime scene.
>
> Quevi's claim lacks arguable merit. The jury in this case was the exclusive judge of Schidek's credibility, and was free to believe all, part or none of the evidence presented. Diggs, 949 A.2d at 879-80. Further, our review of the record reveals that the verdict was not such that it shocks one's sense of justice. The record shows that there was physical evidence linking Quevi to the murder, i.e., the evidence showed that the bullets that killed the victim were fired from a .22 caliber semi-automatic pistol (which was never found), and that several months prior to the shootings, Quevi was in possession of a .22 caliber semiautomatic pistol. In addition, the jury heard evidence and argument

concerning the issue of whether Schidek had lied. Further, circumstantial evidence of Quevi's guilt was offered, including evidence that he left town after the murder, and that a security guard saw him near the murder scene after the shooting and noticed that Quevi was sweating and appeared to be nervous and in a hurry. Based on the above, we conclude that there is no merit to Quevi's claim that his appellate counsel was ineffective for failing to raise the issue of weight of the evidence. Further, the trial court did not err in failing to conduct an evidentiary hearing on this issue as there is no material issue of fact with regard to this claim.

Sup.Ct.Op. dated 9/15/2009 (ECF No. 21-8, pp. 9-10) (some internal citations omitted).

On direct appeal, Petitioner claimed that the trial court erred when it precluded defense counsel from cross-examining Joseph Schidek about the polygraph results. In denying this claim, the Trial Court noted that, under Pennsylvania law, any reference to a witness having taken a polygraph or the results of that exam are strictly inadmissible with no exceptions. Moreover, the Court found that the jury was presented with evidence that Schidek changed his story after the police confronted him and accused him of lying. Thus, the Court found that the jury knew that Schidek was accused of being a liar and thereafter changed his testimony; reference to the polygraph examination was not necessary to establish an ulterior motive for Schidek to change his story. Finally, the trial Court noted the following.

> The Court would also point out that this line of questioning of the witness by defense counsel could very well have had the effect of bolstering this witness's credibility in the eyes of the jury. If the jury had been told about a polygraph examination [and] determined that [Schidek] was lying when he said that he did not know anything about the shooting, they may reasonably have concluded that his testimony or his statements made thereafter were more likely true either because subsequent polygraph examinations ha[d] been conducted to confirm the truth of those statements or that Schidek would simply be more likely to tell the truth fearing that any further deceptions would be revealed under polygraph examinations. Accordingly, questioning of this witness about the polygraph examination not only would have involved inadmissible testimony but may have given rise to a claim that trial counsel was ineffective for pursuing such a line of questioning.

Trial Op. (6/26/2000) (ECF No. 20-4, pp. 6-7).

Turning to Petitioner's contention that appellate counsel should have argued on appeal that the verdict was against the weight of the evidence because Petitioner actually was innocent, I find that, in light of the discussion above, Petitioner has not established that had appellate counsel so argued, the result of his appeal would have been successful. Because the <u>Strickland</u> standard demands that both prongs be satisfied, the Superior Court's determination denying this claim is not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on this claim.

3.  Failure to Raise Sufficiency of the Evidence

Finally, petitioner claims that appellate counsel was ineffective for failing to raise a sufficiency of the evidence claim regarding the second degree murder conviction

Where a petitioner challenges his incarceration on the ground that the evidence was insufficient to support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Jackson</u>, 443 U.S. at 326. *Accord* <u>Moore v. Deputy Commissioner(s) of SCI-Huntington</u>, 946 F.2d 236, 243 (3d Cir. 1991). A federal court must apply this standard with explicit reference to the substantive elements of the criminal offense as defined by state law. <u>Jackson</u>, 443 U.S. at 324 n. 16. *See also* <u>Jackson v. Byrd</u>, 105 F.3d 145, 149 (3d Cir.) (1997). The jury, however, weighs the evidence and the federal courts must defer to the jury's resolution of conflicts in the evidence. <u>Jackson</u>, 443 U.S. at 326.

Moreover, when a state appellate court thoroughly reviews the sufficiency of evidence, that court's determination is entitled to great weight. Parke v. Raley, 506 U.S. 20, 36 (1993). This deferential test places a very heavy burden on the appellant. United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995). The test for insufficiency of evidence is the same under both Pennsylvania and federal law. *See* Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992); Commonwealth v. Bricker, 525 Pa. 362, 581 A.2d 147 (1990) (an appellate court must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses charged).

On appeal from the denial of the PCRA petition, the Superior Court of Pennsylvania held as follows.

> Quevi's next claim on appeal is that the PCRA court erred in denying his PCRA Petition without a hearing on the basis that his appellate counsel was ineffective for failing to raise on appeal the sufficiency of evidence to support his conviction of second degree murder. Quevi asserts that the evidence was insufficient to sustain the conviction because there was no evidence that a robbery occurred, and no conspiracy existed, as Schidek alleged that he was forced to the murder scene by gunpoint.
>
> We evaluate a claim of insufficient evidence under the following standard:
>
> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial

18

> evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
>
> Commonwealth v. Troy, 832 A.2d 1089, 1092 (Pa. Super. 2003) (quotations and citations omitted).
>
> A criminal homicide "constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b).
>
> In the instant case, Schidek testified that Quevi told him that he was going to commit a robbery at the victim's house. Quevi then forced Schidek to the victim's house. After Quevi shot the victim, he told Schidek that he was "going to go look for the money." At that point, Schidek ran from the victim's home.
>
> Contrary to Quevi's contention that there was no evidence of robbery, the above-cited evidence was sufficient to support Quevi's conviction of second-degree murder. Thus, Quevi's claim of ineffective assistance of appellate counsel for failing to raise this claim on direct appeal lacks arguable merit, as counsel will not be deemed ineffective for failing to raise a baseless claim. Further, there is no material issue of fact with regard to this claim; thus, the trial court did not err in failing to conduct an evidentiary hearing on this issue.

Sup.Ct.Op. dated 9/15/2009 (ECF No. 21-8, pp. 10-11) (internal citations omitted).

Counsel acted reasonably in not raising this claim on appeal because it would not have been meritorious. Further, no prejudice resulted from the lack of raising such claim. Therefore, even under *de novo* review using the Strickland standard, this claim should be denied for failing to meet either of the two requisite prongs. More importantly, however, Petitioner has not demonstrated that the Superior Court's determination is contrary to, or an unreasonable application of, clearly established federal law. Thus, he is not entitled to relief on this claim either.

### D. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas

19

petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied. It is further recommended that there is no basis upon which to grant a certificate of appealability.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. '636(b)(1)(B) & (C)] and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

July 19, 2012

*Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

Kevin Richard Quevi
DZ-5854
SCI - Huntingdon
1100 Pike Street
Huntingdon, PA 16654-1112